### THOMOS, Adm'r, v. MURRAY et al.

No. 25407.   Oct. 1, 1935.

Chas. R. Nesbitt, for plaintiff in error.

Conner & Winters, for defendants in error.

PER CURIAM. This action was originally instituted on December 6, 1924, in the district court of Tulsa county, Okla., by James H. Thomas, administrator of the estate of Leonard R. Thomas, deceased, against Thomas Murray, who died during the pendency of the action, the same being thereafter revived in the name of the defendant, First National Bank & Trust Company of Tulsa, Okla., and removed to the court of common pleas, from which error is claimed in sustaining the demurrers of the defendant to the original, amended, and supplemental petitions.

Error was predicated upon the same grounds in all instances, the error, if any, in the ruling upon the original petition being waived by the pleader taking leave to amend, and amending, so the matter will be considered only upon the ruling of the trial court as to the amended and supplemental petitions, the latter of which served only to suggest the death of Thomas Murray. The parties will be referred to in the same manner that they appeared below.

The amended petition alleges two causes of action based upon identical facts, the first of which contains all the usual averments of an action for damages for fraudulent misrepresentations, and the consequent loss of a legal remedy, specifically alleging the loss of a judgment obtained by the plaintiff in his representative capacity against Thomas Murray, in the sum of $1,000, plus interest and costs, obtained on November 8, 1909, by his failure to issue executions and revive in the manner prescribed by our statutes, which the plaintiff alleged to have been caused by the fact that the defendant had fraudulently conveyed his property and concealed the same, and had stated upon numerous occasions and particularly during the month of July, 1919, and at a time when the judgment was in full force and effect, that he had not property with which the same could be paid, which statements the plaintiff relied upon as true, the falsity of which was not discovered until the months of May or June, 1924, and allowed his judgment to become dormant and thereafter ineffective to his damage in the sum of $2,000, this sum representing the value of the judgment.

The second cause of action is couched in exactly the same language as the first, and alleges the loss of a judgment in the sum of $200, with interest and costs, for which the sum of $500 is prayed.

The defendant contends in support of the action of the trial court that the plaintiff, under our statute in aid of execution, had adequate means to have ascertained the truth of the statements, had he so desired, and that the action is barred by virtue of sections 442 and 583, O. S. 1931, while the plaintiff insists that the action being for damages, as distinguished from an action upon a judgment, or an action to reassert a lien, section 185, O. S. 1931, subsection 3, in so far as it provides an exception to the running of the general statutes of limitation, for actions for fraud, is applicable, and that this action was properly brought

within two years of the discovery of the fraud.

Section 442, O. S. 1931, provides:

"If execution shall not be sued out within five years * * * or if five years shall have intervened between the date of the last execution * * * such judgment shall become dormant."

Section 590, O. S. 1931, provides that a dormant judgment shall be revived in the same manner as actions, and section 583, O. S. 1931, lays down a limitation of one year in which such revivor proceedings must have been completed. Sections 479 and 480, O. S. 1931, provide, so far as here material, that when execution is returned unsatisfied, the judgment creditor may be required to appear and answer under oath concerning his property, and section 482, O. S. 1931, provides that he shall not be excused from answering on the ground that his examination will tend to convict him for fraud.

Judgments may be kept alive and effective by the issuance of successive executions before five years have elapsed from the date of judgment or last execution, or if five years shall have elapsed, by revivor within one year from the time the same first became dormant (Edward Thompson Co. v. Bristow, 116 Okla. 243, 244 P. 429, and Neal v. LeBreton et al., 14 Okla. 538, 78 P. 376), or by an action upon the judgment in a particular action, and it is generally held that general statutes of limitations, including the exceptions. imposed thereby, have no application to either actions or judgment or the limitation period prescribed specifically for judgments (Sager v. Jordon, 80 Okla. 25, 193 P. 876), and that where the issuance of execution is not prevented by civil process. such statutes will be strictly construed, and the court will refuse to engraft exceptions other than those contained in the statute itself. In speaking of an attempt to engraft an exception on the statute, the nonresidence of the judgment debtor from the state, the Kansas court, in the case of Smalley v. Bowling, 64 Kan. 818, 68 P. 630, uses the following language:

"For nearly a quarter of a century this court has held, in substance and effect, that if, for any cause. a judgment becomes dormant, it can only be revived within one year from the time such revivor could first have been had, and that, in cases where execution could have been lawfully issued at the instance of the plaintiff thereon, his failure to cause such execution to issue for a period of five years after its rendition would render such judgment dormant. and there-

after it must either be sued upon or revived by motion within the following or sixth year, or it will cease to be a judgment."

It is upon this basis that it is held that a general statute of limitation, such as section 106, O. S. 1931, of our statutes, giving additional time where an action is reversed other than upon the merits, had no application to civil judgments. Berkley v. Tootle et al., 62 Kan. 701, 64 P. 620. That an appeal upon an ancillary matter, execution not being stayed, would not toll the statute. Hoskins v. Peak et al., 100 Okla. 124, 228 P. 478. That the pendency of a creditor's bill to enforce collection of a judgment out of hidden assets did not excuse performance under the statute. Miller & Co. v. Melone et al., 11 Okla. 241, 67 P. 479. That an agreement by which a creditor is prevented from taking steps to enforce his judgment will not extend the time. Savings & Trust Co. of Cleveland v. Bear Valley Irrig. Co., 89 F. 32; Gardenhire v. King, 97 Tenn. 585, 37 S. W. 548, quoted with approval in McGinnis v. Seibert et al., 37 Okla. 274, 134 P. 396. And that an appeal, where supersedeas bond is not given, will not toll the statute. Delay v. Yost, 59 Kan. 496, 53 P. 482, and Bank of Stockham v. Weins, 12 Okla. 502, 71 P. 1073. That the general rule that limitations will not run against a person in trust capacity have no application to a judgment against a trustee. Mason v. Finley, Arm'r, et al., 134 Okla. 89, 272 P. 408. See, also, 21 A. L. R. 1039.

If this were an action upon a judgment and the pleader had attempted to plead around the statutes by alleging fraud, the same situation presented in the above authorities would have been presented; however, the plaintiff insists that, inasmuch as it is an action for fraud and deceit, these authorities are not applicable. The ultimate effect in both instances would be to put the judgment in force, and we believe that under the above authorities it is merely an attempt to do indirectly that which the law would not sanction directly.

In the case of Morrill v. Madden, 35 Minn. 493, 29 N. W. 193, under the statute of Minnesota, which is identical with our statute, with the exception of allowing ten years to issue execution, this identical question was presented. In that case, the lower court overruled a demurrer, which the Supreme Court held error, using this language, which is self-explanatory:

"These are the substance of plaintiff's allegations upon which he bases a claim for

relief in damages against the defendant, the lien of which he claims to have lost by trust-ing to the defendant's representations and conduct. It will be observed that the alleged fraudulent representations, as set up, are but the continuation and culmination of the alleged attempt on the part of the debtor to secrete his property until after the expiration of the statutory limitation. which it seems was successful. It was never understood, however, that a cause of action for damages would arise in favor of a party for the recovery of the amount of a judgment, which had been suffered to become outlawed, because the judgment creditor had failed to discover property which the debtor had fraudulently concealed until after the statute had run. The debtor in this case had put his property out of his hands. He had followed it up by a falsehood as to the good faith of the transfer. But the creditor had no legal right to exact information from him, except in the course of judicial proceedings. He was a hostile party, having, evidently, no disposition to make payment. The public records would disclose the transfer of property. It does not appear that there was not ample time and opportunity, during the 15 years Morrill owned the judgment, for inquiry and legal investigation as to the validity of the transfer, or the nature and amount of the consideration received therefor, and the disposition of it, and the truth of the debtor's statements.

"Again, it is alleged that he represented that the land conveyed to his father was for a full consideration paid. If the judgment creditor believed such statement, he should have taken measures to reach such consideration. Reasonable diligence would have compelled him to seek to reach the property or the consideration, and not to rest implicitly upon his general statement that he had no property. The courts were open for his examination, under oath, by supplementary proceedings, or in a creditor's suit. Upon the state of facts disclosed, the creditor rested at his peril upon the general and unsworn representations of a hostile and interested party to the suit, as to his own financial condition, till his legal remedies were lost by lapse of time. Insurance Co. v. Reed, 33 Ohio St. 291.

"We do not undertake to say that there might not be such fraudulent representations or practice by the debtor as to deceive a reasonably prudent and vigilant person, and induce him to abandon the pursuit of property to satisfy his judgment until too late to reach it, so as to entitle him to a remedy by an independent action, but we do not think such a case is here presented. The courts cannot, under ordinary circumstances, extend relief to parties who fail to exercise reasonable diligence or discretion. Order reversed."

While the court, in the latter case, seems to have rested the matter upon the fact that the judgment creditor had not used due diligence, a doctrine that the plaintiff insists does not prevail in Oklahoma, citing the cases of Gidney v. Chappell, 26 Okla. 737, 110 P. 1099; Sullivan v. Helbing (Cal. App.) 226 P. 803; Stevens et al. v. Riley, 56 Okla. 455, 156 P. 157; Dover Merc. Co. v. Gates, 136 Okla. 197, 277 P. 231; Thompson v. Davis, 124 Okla. 79, 254 P. 501, and kindred cases, to the effect that, where one is misled by the fraud of another, such guilty person cannot escape the legal consequences of his acts by saying the fraud might have been discovered with ordinary care, which correctly states the rule, these cases are not applicable for the reason that under our statutes, in aid of execution and for dormancy and revivor of judgments, the standard of care and the measures which a judgment creditor must take to keep his judgment in force is fully provided for by our statutes, and inasmuch as they contain no such exceptions, none will be made.

It is true that in some instances, where affirmative relief is asked, as in the case of Nellis v. Minton, 91 Okla. 75, 216 P. 149, where the plaintiffs asked title to be quieted against a judgment, a more liberal rule prevails under the maxims that he who seeks equity must do equity, and that the statute of limitations can never be used as a sword, only a shield, but these cases do not conflict with the rule here laid down.

For the reasons stated, the judgment of the lower court is affirmed.

The Supreme Court acknowledges the aid of Attorneys J. G. Hughes, R. Place Montgomery, and Ralph Carder in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Hughes and approved by Mr. Montgomery and Mr. Carder, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., and BAYLESS, WELCH. PHELPS, and CORN, JJ., concur.